Let me make sure council is on the line. Mr. Dermosropian, am I saying that right? You got it right. Dermosropian. Okay, good. And Ms. Lippman. Yes, good afternoon, Your Honor. Okay, good afternoon. So, Mr. Dermosropian, you've reserved one minute of rebuttal, so you've got nine minutes out of the game.    I'm going to call you back in. I'm going to call you back in. This is a case report. My name is Rudy Blankenship. I represent the plaintiff appellate in this case, Ms. Toombs. This appeal is following a summary judgment motion that was decided by the district court. The only claims or cause of action before the district court that we're asking this court to review is an appeal obtained to Ms. Toombs race discrimination, retaliation, and hostile work environment claims. As the court is probably I'm sure is aware, the burden-shifting test that is applied to discrimination and retaliation cases has also been applied here as well. There's no dispute that the appellant in this case, Ms. Toombs, was part of a protected group since she was a black employee at NYSHA, that she was qualified for a position. In fact, I don't believe the appellees contest the fact that she was qualified for a position. The district court directly held that there is an adverse employment action at the time of termination. We obviously also agree with that point. We also argue that there were other adverse employment actions that the appellant was subjected to, including being put on probation without the consultation or review of her direct supervisors, being issued several write-ups, and sent to a general hearing, and we'll look at those write-ups. Probably all of them were unsubstantiated, even fabricated, in order to create a record of poor performance or alleged poor performance. Ms. Toombs was also denied the ability to transfer out of Reese Houses where she was working, and we'll adjust that in a moment as well, but there was direct interference by the superintendent, who was the subject of a lot of those claims of discrimination, who specifically interfered, blocking her, not allowing her to transfer outside of that environment. We argue that there's a lot more adverse employment actions that she was subjected to besides termination. We believe the District Court erred in holding that the occurrence under which the termination occurred did not rise to the level of a, excuse me, did not rise to an inference of a race discrimination. We respectfully disagree. In fact, we believe each one of the employment actions that we just mentioned is surrounded by significant amount of evidence which is part of testimony during depositions, emails, and the sequence of events and even the time frame. It supports a strong inference, in fact, of race discrimination.  if we look at the beginning when Ms. Toombs, who was a former employee of NYSHA, started working for NYSHA back in 2007. Less than a year later, in 2008, she was promoted. The first six and a half years of her employment, she did not have any issues with any of her supervisors or the superintendent. There is an allegation by the police that the District Court also relied on where they cite or refer to significant write-ups that predated Mr. Lopez, who was the superintendent, the subject of this case, who predated him becoming the superintendent at Reese Houses. There were a few significant issues with regards to those write-ups predating Mr. Lopez becoming the superintendent. For instance, it is our position that those allegations of poor performance were not corroborated by NYSHA. Hence, they did not lead to any local or general hearing prior to Mr. Lopez becoming the superintendent. Mr. Lopez became the superintendent in September 2013. Excuse me, but you just you necessarily make the concession that your client was the subject of various counseling letters and discipline before the arrival on the scene of the man, Mr. Lopez, whom she claims is the person who harbors the animus. So, surely it is persuasive that her performance was deemed unsatisfactory in various respects by people before he arrived. Well, we only refer to those write-ups or performance submissions by NYSHA prior to Mr. Lopez coming in only because they're part of the record. We do not concede But they are part of the record and what they can be read to say is that your client was delivering unsatisfactory performance before the arrival of the person whose write-ups are deemed to have been motivated by race. Your Honor, none of these documents that were attached as an exhibit, Exhibit 15 to the moving papers in the District Court were submitted as evidence at my client's testimony during the deposition. None of them. They were submitted as an exhibit to the Motion for Summary Judgment. They were produced through discovery, but they were not questioned regarding those allegations of poor performance. A lot of them were not There's no reason why they should question her about documents showing poor performance before the arrival of Mr. Lopez because that's very helpful to your adversary, so why should your adversary make an issue of it? All your adversary has to do is to say she had poor performance before Mr. Lopez arrived, and this is a separate question as to whether you can connect anything Mr. Lopez did to race, but you certainly can't connect anything that happened before Mr. Lopez arrived to Mr. Lopez. The only connection with Mr. Lopez's arrival to what happened prior to him is that he's the only supervisor and superintendent that brought my client to a general hearing. None of the prior superintendents or supervisors did that. In fact, the direct supervisors, Mr. Green and Ms. Ford, testified that they never had an issue with her performance. They never wrote her up. There was no issue or complaint regarding her performance. The point I was trying to make regarding prior incidents is that my client did not have an opportunity to address them while she was employed because she was not aware of them except maybe one or two. A lot of things were actually submitted, put on a file, and we believe, strategically maybe, were not addressed at her deposition. The connection to race after Mr. Lopez became the superintendent in September 2013 is that upon his arrival at the first staff meeting and that was witnessed by my client in a room almost completely occupied by Black employees, he did state, I want to get rid of you and bring my people in. Soon after he said that... I'm sorry, there's your client put in an affidavit or testified at a deposition that she heard this comment be made? Yes, Your Honor, she did. She testified to it, which was denied by Mr. Lopez at his deposition, which we testified to by my client. My understanding is she heard somebody say that he said that. That was the testimony of Ms. Ford. But then Ms. Ford said that she heard it from other folks, right? That's correct. So it's a double hearsay problem. It would not be admissible then, right? Well, if my client heard it and Mr. Lopez was able to testify, I wouldn't believe the hearsay rule would apply to her testimony. Well, you're saying that your client heard Mr. Lopez say this? Or she heard somebody else say he said this? My client heard the statement. She was in the room when the statement was made. And where is that in the record? Where would we find that testimony by her? We'll find the exact page in the record I'm producing. Maybe you, Your Honor. Okay, great. Thank you. The question or the issue regarding Ms. Ford, Ms. Ford did testify she was not at Rees Houses when the statement was made. She testified, so she could not testify as to what Mr. Lopez said. She did testify that she heard from a group of people that a similar statement or something similar to that statement was made. The police take the position that that statement, which we believe is a significant statement going to the intent of the person who made it is either a stray comment or beyond the statute of limitation or hearsay. We disagree with all three arguments by the police. A stray comment is only stray and not admissible or not supportive of a claim of discrimination depending on who made it, when they made it, to whom, and the context of it. This statement that was made immediately after the superintendent became the highest position employee at Rees Houses, immediately after he became there, made to the room of employees the majority of them were Black. He specifically said that he wants to get rid of them and bring these people in. We believe that started a pattern of discrimination because he did target numerous Black employees, such as my client, Mr. Green, who was demoted and transferred out and replaced by a Hispanic employee. Ms. Ford was also demoted and transferred out. Mr. Lopez testified that he never recommended the termination or demotion of any Hispanic employee. We believe this is the initial event of a probably long list of patterns or examples of discrimination and retaliation that Mr. Lopez engaged in. I don't see my time's up, but I'm going to keep on going until you want to stop me. Let me just see if the panel has any other questions. No, I have no other questions. Let's then hear from Ms. Littman and then you've got a minute of rebuttal. Thank you. Good afternoon. May it please the court. Jane Littman from the New York City Housing Authority on behalf of the defendant, Apolline Neitsch. I would just like to address some of the points and questions that were made during my opposing counsel's argument. First of all, as Judge Jacobs pointed out and as Judge Swain observed in her opinion, Toombs' disciplinary record stretches back to the commencement of her employment long before Lopez began at Reese Houses in September 2013. Second of all, the only evidence that Toombs offered regarding the alleged statement made by Lopez with respect to this alleged statement, quote, I want you out of here so I can bring in my people, was Ford's testimony, which is hearsay, quote, about getting people out of there. Toombs did not proffer her own testimony and I would also note that Toombs goes back and forth as to when this alleged statement was made. She says first it was made in September 2013 when Lopez first arrived then she says it was made in March 2014. She doesn't point to her own testimony on this issue. She relies solely on hearsay and that is what she proffered in opposition to Knight's summary judgment motion. I would also note that even if, and she didn't, but even if Toombs had proffered invisible evidence regarding this alleged statement, the alleged statement has no legal significance because it is a straight remark. It was made well over a year prior to the June 26, 2015 termination whether it was allegedly made in September 2013 or in February, March 2014 and it cannot defeat summary judgment. Furthermore, the alleged statement is time barred. Any wrongful conduct that occurred over 300 days prior to Toombs first SDHR complaint, which is dated May 18, 2015, and so that date works out to July 22, 2014, such as the alleged statement cannot support Toombs Title VII claims. Now I noticed in Toombs's reply brief she raised... I'm having a little trouble with some of these arguments. If he said, I don't like black people, and he said it more than a year before whatever action was taken against her, that would A, just be a stray remark and B, that would be time barred in some way? That couldn't be evidence as to his motivation for whatever he did? Well, Your Honor, the statement wasn't I don't like the alleged statement. The alleged statement is I want to get rid of you people. It is denied. It is denied and there is no admissible evidence to corroborate. So why don't we stick with the fact that if it is correct that there is no admissible evidence of it, why don't you move on to some of the other things that your adversary said? For example, he said that Mr. Lopez demoted and got rid of several black employees and no Hispanic employees. That was not my understanding of the record, but I could be wrong. How do you respond to what he said about that? Your Honor is absolutely correct in that point and the record evidence regarding the workforce demographics is extremely persuasive here. First of all, Felicia Ford testified that she was demoted because she was probationary and did not pass her probation for no other reason. Mr. Green testified he was demoted because of an argument over a soft spreading assignment and for no other reason. And NYCHA included in the record information regarding the workforce demographics which show that between Lopez's commencement at Reese Houses in September 2013 and May 2015, only three caretakers were terminated including Ms. Goomes, one of whom was Hispanic. Five caretakers who self-identify as black commenced working at Reese Houses after Lopez began working there in September 2013 and as of September 18, 2015 of the 38 employees working at Reese Houses under Lopez's supervision, 50% were black. So in fact, Your Honor, the record evidence contradicts what my opposing counsel was stating during his argument. Furthermore, the district court further correctly held that Goomes failed to provide any evidence that NYCHA's legitimate non-discriminatory reasons for her termination were merely a pretext for discrimination. And the record evidence, including counseling memoranda and disciplinary charges, amply supports the district court's holding that NYCHA, quote, has produced substantial evidence showing that Goomes' work performance was persistently deficient, that she repeatedly failed to comply with time and attendance requirements, and that she was habitually insubordinate to her superiors. And there is no evidence of discriminatory animus to support Goomes' hostile work environment claim. And I would also add that the district court correctly held that Goomes failed to proffer a prima facie case of discriminatory retaliation, and the record evidence does not support a causal connection between any of Goomes' alleged protected activities and an adverse employment action. And here I would note that several of Goomes' alleged protected activities are not protected, and that Goomes' undated complaints to Mr. Green regarding very hard supervision and frequent inspections of her work area are not protected under Title VII. Likewise, Goomes' March 25, 2015 311 complaint was not protected because she did not complain of unfair treatment due to her membership in a protected class, and in fact Goomes conceded this point during her deposition. And then with respect to Goomes' July 7, 2014 complaint with the Office of the Inspector General regarding her claim that Lopez and Soriano-Torres wanted to transfer all the African-American employees. Oh, I'm sorry, was there a question? Sorry. On July 21, 2014, Goomes settled disciplinary charges through an admission of guilt, and as the district court held, this admission of guilt negates any retaliatory inference that could be drawn from the proximity of the conference disposition and her OIG complaint, and the general trial was requested almost two months before she even filed her OIG complaint. Also, Goomes cannot show a causal connection between her May 18, 2015 SDHR complaint and her termination, because her termination was requested one week prior to the filing of her SDHR complaint, and as the district court found, it is undisputed that NYCHA's law department did not receive notice of her SDHR complaint until a week after her termination, and Lopez was unaware that she filed an SDHR complaint until long after her termination, and finally, as the district court correctly found, it is undisputed that after Goomes complained to Ms. Ford about overtime, Ms. Ford responded by implementing a system whereby overtime was allocated according to caretaker seniority, thereby addressing Ms. Goomes' concerns directly. So, therefore, NYCHA respectfully submits that the district court properly granted NYCHA's summary judgment motion in its entirety and dismissed Goomes' complaint. The court has no questions. I have nothing further to say. Okay. Thank you. I'll now hear from Mr. Dermosropian for a minute of rebuttal. Yes, Your Honor. Very quickly, the document that opposing counsel is referring to regarding the how many Black as opposed to Hispanic employee, the ratio of employees is not a conclusive document. It's actually, in my opinion, probably misleading because it does not show the number of employees, Black employees, prior to Lopez as compared to after him becoming the superintendent. It probably does not give us an answer as to how many were terminated or removed or transferred. With regards to the complaints, we disagree that these are not protected complaints. She specifically, and I quote, complained about discrimination. She specifically complained about African-American employees being mistreated. She specifically complained about Black employees receiving less overtime. This was a verbal complaint to Ms. Ford. She specifically complained to Mr. Green that she wants to transfer because she's being harassed by Mr. Lopez. Both Mr. Green and Ms. Ford testified corroborating those complaints. Did you find in the record where it is that your client allegedly heard Lopez say, I want you out of here? Your Honor, it is in the First Amendment complaint. I don't have it. But that's not going to, I mean, the First Amendment complaint is not really going to get you there. But I was trying to look for it quickly. I should have been ready for that, but I don't have the exact page in the record, Your Honor. I'll be happy to supplement. No, no, that's all right. I guess my time is up. Any questions, Your Honor? Thank you both. We will reserve decision.